```
            IN THE UNITED STATES DISTRICT COURT
         FOR TH SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**BRANDON MARKER,**

    **Movant,**

**v.**                                        **Case No. 2:08-cv-00292**
                                                       **Case No. 2:02-cr-00084-01**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is a document filed by Brandon Marker (hereinafter "Defendant"), and which has been docketed as a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 134). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The court has concluded that Defendant's document is a successive § 2255 motion and should be dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 17, 2002, a young man named Nicholas Headden was kidnapped at gun point from a mobile home in Jacksonville, North Carolina by two men, who were later identified as Defendant and Cory Feres. Headden and his brother allegedly owed Defendant money from a prior drug deal involving 200 pounds of marijuana. Defendant was affiliated with a drug distribution ring that had

been led by Jason Norris.

Defendant and Feres drove Headden to another friend's house where Headden retrieved $10,000 and a .45 caliber gun from a safe, both of which were taken by Defendant and Feres.  Headden still owed more money and stated that Defendant and Feres said they would not let him go until the money had been paid.  Defendant then directed Headden to contact his brother's girlfriend, Kelly Gust, in Michigan, to get her to pay the money.

Defendant and Feres apparently planned to drive Headden to Michigan to get the money.  Headden subsequently told Defendant and Feres that they would meet Gust in Charleston, West Virginia, because it was about half way for each of them.  Unbeknownst to Defendant and Feres, Gust told Headden that she would call the police.

Federal and local law enforcement officials in Charleston, West Virginia were notified that Headden had been kidnapped and that he and his abductors were on their way to Charleston in a white Ford Explorer with Pennsylvania license plates.  FBI Special Agent Jack Remaley had telephone contact with the FBI in Wilmington, North Carolina and/or Headden's father during this period, and was apprised of their destination.

Around 3:30 or 4:00 a.m., on March 18, 2002, law enforcement was notified that Headden and his abductors were at the Fairfield Inn on Leon Sullivan Way in Charleston.  When law enforcement

arrived at the hotel, the white Explorer was found in the parking lot, and Feres was inside the vehicle, unarmed.  Headden was outside the vehicle, having apparently just telephoned Gust from a pay phone to advise her of his location.  Headden stated that Defendant was inside the hotel with drugs and guns.

Hotel management informed law enforcement that a man had just checked in and had gone to room 411.  Shortly after the Charleston Police knocked and announced their identity, Defendant opened the door to the hotel room.  Officers then located a black zippered bag which was laying open in the room.  In plain view in the bag was the butt of a gun and what appeared to be cocaine powder.  It was later determined that the bag contained nine ounces of cocaine powder and 100 tablets (weighing 14.4 grams) of Ecstacy.  The officers also seized $15,000 in cash, and two firearms, one of which had an obliterated serial number.

On April 10, 2002, Defendant and Feres were indicted on one count of aiding and abetting the possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count One), and one count of knowingly using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1), 2 (Count Two). (# 20).  Defendant was represented by retained counsel, Peter Mineo, from Fort Lauderdale, Florida, and Troy Giatras, who served as local counsel.

On July 2, 2002, Defendant pled guilty, pursuant to a written plea agreement, to both counts of the indictment.  (## 58, 59). The district court ordered the Probation Department to prepare a Presentence Investigation Report ("PSR").  Defendant, by counsel, objected to the inclusion of 200 pounds of marijuana that Defendant had allegedly sold to Headden or his brother, in his relevant conduct.  Defendant also objected to the recommended two-level enhancement for his role in the offense and the recommended departure from the Guideline range for involvement in a kidnapping.

At the sentencing hearing on December 18, 2002, Defendant, by counsel, pursued the three objections.  The district court heard testimony from Nicholas Headden, and found him to be a credible witness.  The district court overruled Defendant's objection to the attribution of the marijuana as relevant conduct, and found that 248 grams of cocaine powder and 200 pounds of marijuana were attributable to Defendant as offense and relevant conduct. Accordingly, based upon a marijuana equivalency of 147.52 kilograms, Defendant's base offense level was determined to be 26.

The district court also determined that a two-level enhancement for his role in the offense was appropriate and overruled Defendant's objection on that basis.  Thus, Defendant's offense level was raised to 28.  After a three-level reduction for acceptance of responsibility, Defendant's total offense level was determined to be 25.

With a criminal history category of I, Defendant's Guideline sentencing range on Count One was determined to be 57-71 months. On Count Two, Defendant faced a consecutive sentence of five years to life, but the Guideline determination was 5 years (60 months).

The district court elected not to depart from the Guideline range on the basis of the kidnapping, but sentenced Defendant to the top of the Guideline range at 71 months on Count One, to be followed by a consecutive 60 months on Count Two, for a total sentence of 131 months of imprisonment, followed by a 5-year term of supervised release. Defendant was also ordered to pay a $5,000 fine and a $200 special assessment. (# 77).

On December 27, 2002, Defendant filed a Notice of Appeal. Mr. Mineo and Mr. Giatras were thereafter allowed to withdraw as counsel, and Matthew Victor was appointed to represent Defendant on appeal. In his appeal, Defendant only challenged the application of the two-level enhancement for his role in the offense.

On July 29, 2003, the United States Court of Appeals for the Fourth Circuit affirmed Defendant's sentence and dismissed his appeal. Defendant did not seek a writ of certiorari in the United States Supreme Court. Accordingly, his judgment became final on or about October 29, 2003.

Defendant then filed the instant section 2255 motion (# 119) on October 24, 2004, just five days before the expiration of the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(A).

See Houston v. Lack, 487 U.S. 266, 276 (1988)(motion considered filed upon depositing into prison mail collection box). That same day, Defendant filed a Motion for Leave to File an Amended Motion, stating that he wished to file an amended motion with further support of his claims within 30 days. (# 118). However, Defendant did not file an amended motion within 30 days.

The grounds for relief raised in Defendant's section 2255 motion are as follows:

> Ground One: Ineffective assistance of counsel in the plea process.
>
> Counsel unprofessionally failed to advise Mr. Marker as to all facts and law relevant to his decision to plead guilty. Had Mr. Marker been fully advised, there is a reasonable probability that he would have pleaded not guilty and proceeded to trial. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.
>
> Ground Two: Ineffective assistance of counsel in the pretrial process.
>
> Counsel unprofessionally failed to timely, properly, and effectively move for suppression of evidence material to the conviction and/or sentence of Mr. Marker and counsel could have but did not timely move for dismissal of the indictment. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.
>
> Ground Three: Ineffective assistance of counsel in the sentencing process.
>
> Counsel could have but did not object to use of the "preponderance of the evidence" standard instead of the "clear and convincing evidence" standard for the dramatic enhancement of Mr. Marker's sentence for uncharged conduct.

Ground Four:   Ineffective assistance of counsel in the sentencing process.

Counsel unprofessionally failed to investigate or present available evidence material to the sentencing of Mr. Marker. Counsel also unprofessionally failed to object to unlawful, false and unreliable evidence used to determine Mr. Marker's guideline sentencing range and ultimate sentence. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Ground Five:   Ineffective assistance of counsel in the sentencing process.

Mr. Marker was prejudiced by the objectively unreasonable performance of counsel during the sentencing process, when counsel unprofessionally failed to move for appropriate downward departure in Mr. Marker's case. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Ground Six:   Ineffective assistance of counsel in the sentencing and direct appeal process.

Mr. Marker was prejudiced by the objectively unreasonable performance of counsel during the sentencing process, when counsel failed to timely argue that Mr. Marker was denied Due Process of Law and his Sixth Amendment constitutional rights to notice and jury trial by the increase in his sentence by facts not charged in the indictment, not submitted to a jury, and not proven beyond a reasonable doubt or admitted by Mr. Marker. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Ground Seven:   Ineffective assistance of counsel in the direct appeal process.

Counsel unprofessionally failed to investigate or present the strongest issues available to Mr. Marker for his direct appeal and failed to preserve viable issues for collateral review. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

>    Ground Eight:   Mr. Marker was denied his Sixth Amendment constitutional right to counsel unburdened by an actual conflict of interest.

Mr. Marker's counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, sentencing, and direct appeal process in this case. Counsel owed a "duty" other than to Mr. Marker. This duty was in conflict with the duty owed to Mr. Marker. Counsel chose between the duties. This choice adversely affected the performance of counsel during the pretrial, sentencing, and direct appeal process.

>    Ground Nine:   Ineffective assistance of counsel.

Mr. Marker was prejudiced by the cumulative impact of multiple deficiencies or errors by counsel during the pretrial, sentencing and direct appeal process. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

>    Ground Ten:   Mr. Marker was denied his Fifth Amendment constitutional right to due process of law and his Sixth Amendment constitutional right to notice and a jury trial.

Mr. Marker's statutory maximum sentence was increased based upon facts not charged in the indictment, not submitted to a jury, and not proven beyond a reasonable doubt or admitted by Mr. Marker.

>    Ground Eleven: Mr. Marker was denied his Fifth Amendment constitutional right to due process of law.

The Court lacked knowledge of the available range of sentencing discretion under applicable law due to change in the law effected by <u>Apprendi v. New Jersey</u>, 530 U.S. ___, 147 L. Ed. 2d 435, 120 S. Ct. 2348; 2000 U.S. LEXIS 4304 (6-26-00) and <u>Blakely v. Washington</u>, 2004 U.S. LEXIS 4573 (6-24-04).

(# 119 at 3-5).

Because Defendant's section 2255 motion raised claims implicating the Supreme Court's decision in <u>Blakely</u>, and, consequently, its subsequent decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), which applied the holding in <u>Blakely</u> to the United State Sentencing Guidelines, the undersigned held Defendant's motion in abeyance until appellate courts had ruled on the application of those decisions in collateral review proceedings. (# 123).

On October 17, 2005, the Clerk's Office received and filed a document entitled "Petitioner's Supplemental Pleadings," in which Defendant sought to supplement his section 2255 motion to include a claim that his appellate counsel was ineffective by "not fully briefing the cross reference used, to wit 200 pounds of marijuana, to set base offense level in accordance with U.S.S.G. § 2D1.1(a)(7), at level 26 for 100 kg. but less than 400 kg. of marijuana. PSR at page # 5." (# 127).

On February 7, 2006, the undersigned filed proposed findings and recommendations that the presiding district judge deny Defendant's § 2255 Motion. On February 21, 2006, Defendant filed objections (# 129). On June 26, 2006, the Hon. John T. Copenhaver, Jr. adopted and incorporated the proposed findings and recommendation and denied the § 2255 motion and entered judgment (## 130, 131). It appears that Defendant did not seek a certificate of appealability from that decision.

The document now before the court argues that he was "subjected to a mandatory minimum sentence of five years . . . based on the use of relevant conduct," [rather than only on the amount of drugs involved in the offense of conviction]. (# 134, at 2.) He relies on United States v. Estrada, 42 F.3d 228, 232 n.4 (4th Cir. 1994). He contends that his sentence on Count One was erroneous, and should have been based only on 248 grams of cocaine, without consideration of the 200 pounds of marijuana provided to Nick Headden. (# 134, at 3.) Defendant asserts that his attorney failed to bring this error to the court's attention. The court notes that the issue of whether Defendant's sentence should have taken into account the marijuana was extensively addressed in the proposed findings and recommendation on Defendant's first § 2255 motion, and resolved adversely to Defendant's position.

## ANALYSIS

The undersigned proposes that the presiding District Judge **FIND** that document # 134 is Defendant's second section 2255 motion, in that he is collaterally attacking his sentence. His request for relief asks the court to "cause my judgement and commitment to be amended to correct the error or, in the alternative, permit me to file the necessary motion in the federal court in an effort to have this error corrected myself." Id., at 5. Title 28, United States Code, Section 2244(b)(3)(A) provides: "Before a second or successive application permitted by this section is filed in the

10

district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Similarly, Rule 9 of the Rules Governing Section 2255 Motions states, "Before presenting a second or successive motion, the moving party must obtain an order from the appropriate court of appeals authorizing the district court to consider the motion, as required by 28 U.S.C. § 2255, para. 8." Paragraph 8 of § 2255 requires a second or successive motion to contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Defendant's document contains neither newly discovered evidence nor a new rule of constitutional law.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has not received authorization from the United States Court of Appeals for the Fourth Circuit to file a second or successive petition. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** Defendant's section 2255 motion (# 134).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Brandon Marker, and to counsel of record.

   May 15, 2008                                                    /s/ Mary E. Stanley
      Date                                                        Mary E. Stanley
                                                            United States Magistrate Judge